# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### Wheeling

**NICHOLAS THOMAS BERRING-BILLMAN,**

                Plaintiff,

v.                                              Civil Action No.: 5:21-CV-67
                                                            Judge Bailey

**JOHN DOE #1**, S.H.U. Lieutnant,
**JOHN DOE #2**, Correctional Officer,
**JANE DOE,** Day-Shift Correctional Officer,
**JOHN DOE #3,** Correctional Officer,
**JOHN DOE #4,** Compound/Correctional Officer, **JOHN DOE #5,** Compound/Correctional Officer, **JOHN DOE #6,** Compound/Correctional Officer, and
**MR. J. KONDRLA,** a counselor at USP Hazelton,

                Defendants.

## REPORT AND RECOMMENDATION

### I. Background

Plaintiff initiated this action on May 3, 2021, by filing a Complaint under ***Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics***, 403 U.S. 388 (1971).  On May 23, 2022, plaintiff filed an amended Complaint.  [Doc. 28].  On June 9, 2022, this Court directed plaintiff to identify each of the unnamed John Doe defendants within 60 days or they would be dismissed, and directed the Clerk to issue a summons to the only named defendant, who at that time was named as "Unit Case Manager Koukola."  [Doc. 30].  On June 13, 2022, the summons for Koukola came back unexecuted, with BOP staff indicating there was no record of a staff member by that name.  On June 27, 2022, the Court directed plaintiff to provide the

1

full name and address of this defendant or to show cause why the claims against him should not be dismissed. [Doc. 37]. On July 5, 2022, plaintiff indicated that there had been a misspelling and that this defendant should have been named as "Mr. J. Kondrla." [Doc. 39]. The Court directed summons be issued to defendant Kondrla, and on September 12, 2022, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. [Doc. 46]. On the same date, this Court issued a **Roseboro** notice, directing plaintiff to file any response in opposition within twenty-one days. To date, over sixty days past plaintiff's receipt of the Motion, he has not filed any response to the Motion, nor provided the Court with the names of the John Doe defendants.

This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned recommends the case be dismissed.

## II. The Complaint

Plaintiff's Complaint raises several claims. First, plaintiff claims that defendant Kondrla and others worked in the unit in which plaintiff was housed and left plaintiff and his cellmate in a cell with a broken toilet for an extended amount of time, causing them to "live, eat, and breath fecal matter & urine sometimes up to 3 days before they would flush our toilet." [Doc. 28 at 7]. Plaintiff alleges that requests to change cells were ignored. Plaintiff raises four more claims against unnamed defendants: first, that John Doe #1 sexually harassed plaintiff while he was in solitary confinement; second, that John Does #1-3 made sexually harassing comments to plaintiff and slapped him; third, that John Does #1-4 stripped plaintiff and left him

naked for an hour while making harassing comments, and fourth, that John Does #1-5 "all at one point slapped or punched [plaintiff] or in some way assaulted me while cuffed." [Id. at 9].

### III. Standard of Review

"A responsive pleading captioned as a motion to dismiss or, in the alternative, as a motion for summary judgment puts all parties on notice that a court could construe the motion either way." **Newsome v. Williams**, 2016 WL 11431790, at *2 (N.D. W.Va. May 26, 2016) (Trumble, MJ), *report and recommendation adopted* **Newsome v. Williams**, 2016 WL 4153615 (N.D. W.Va. Aug. 5, 2016) (Groh, CJ) (quoting **Laughlin v. Metro. Washington Airports Auth.**, 149 F.3d 253, 260 (4th Cir. 1998)).

### A. Motion to Dismiss - Fed.R.Civ.P. 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." **Republican Party of N.C. v. Martin**, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. **Mylan Labs, Inc. v. Matkari**, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also* **Martin**, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555 (2007) (quoting **Conley v. Gibson**, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted), to one that is "plausible on its face," [*Id*. at 570], rather than merely "conceivable." *Id*. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id*.

The plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520–1 (1972) (per curiam); *Erikson v. Pardus*, 551 U.S. 89, 94 (2007); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, *Haines*, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to

dismissal. *Id*. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. ***Barnett v. Hargett***, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. ***Small v. Endicott***, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." ***Beaudett v. City of Hampton***, 775 F.2d 1274 (4th Cir. 1985).

B. <u>Motion to Dismiss for Failure to Prosecute</u>

As defendants point out, under either Federal Rule of Civil Procedure 41(b) or this Court's inherent power, a case may be dismissed with prejudice for failure to prosecute.  *See* ***Hill v. Berryhill***, No. 1:18-CV-167, 2019 WL 3034671, at *3 (N.D. W.Va. July 11, 2019) (citing Fed. R. Civ. P. 41(b); ***Link v. Wabash R.R. Co.***, 370 U.S. 626, 629–32 (1962)).  Under Federal Rule of Civil Procedure 41(b),

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

Fed. R. Civ. P. 41

C. <u>Motion for Summary Judgment</u>

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the

evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986).

In **Celotex**, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. **Celotex**, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." **Matsushita**, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. **Id**. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." **Anderson**, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. **Id**. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." **Matsushita**, 475 U.S. at 587.

## IV. Analysis

### A. The claims against the unnamed defendants should be dismissed for failure to prosecute.

In their memorandum in support of their Motion, defendants argue that all claims against the unnamed Jane/John Doe defendants should be dismissed for failure to prosecute. The undersigned agrees. On June 9, 2022, the undersigned noted that the unnamed Jane and John Does could not be served because they had not been identified and gave plaintiff an additional sixty days to identify these defendants. To date, plaintiff has failed to identify any

6

of these defendants, nor has he shown good cause for this failure. Accordingly, the claims against these defendants should be dismissed with prejudice for failure to prosecute.

**B. The claim against defendant Kondrla should be dismissed for failure to exhaust administrative remedies.**

Turning to the only remaining claim, the claim against defendant Kondrla for ignoring the unsanitary conditions in plaintiff's cell, the undersigned finds that this claim should be dismissed for failure to exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e (a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." **Porter v. Nussle**, 534 U.S. 516, 524 (2002). Thus, exhaustion through administrative remedies is clearly mandated by § 1997(e)(a) prior to seeking relief through suit pursuant to **Bivens**. **Booth v. Churner**, 532 U.S. 731, 741 (2001). "[F]ederal prisoners suing under **Bivens v. Six Unknown Fed. Narcotics Agents** [ ], must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." **Porter v. Nussle**, 534 U.S. at 524 (internal citation omitted). As recognized in **Porter** and **Booth**, exhaustion is a prerequisite to suit, and accordingly, plaintiff was required to exhaust all available administrative remedies prior to filing his **Bivens** complaint in federal court.

Moreover, in **Woodford v. Ngo**, 548 U.S. 81, 93–94 (2006) (internal citations omitted), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) "to eliminate unwarranted federal-court interference with the administration of prisons"; (2) to "affor[d] corrections officials time and opportunity to address complaints

internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."

Plaintiff concedes there is a prisoner grievance procedure in the institution where the events occurred and in the institution where he is currently incarcerated, but alleges that at USP Hazelton, FCI Beckley, and at the FTC Oklahoma City transfer center, he was repeatedly denied requests for administrative remedy forms. [Doc. 28 at 4–7]. Defendants submit a declaration by Misty Shaw, a paralegal at the BOP's Mid-Atlantic Regional Office showing that plaintiff has not filed *any* administrative remedies while in custody. See [Doc. 46-2]. The undersigned finds that plaintiff's conclusory allegation that he was denied all administrative remedies at three separate institutions is unsupported by the record, and his claim against defendant Kondrla should be dismissed for failure to exhaust administrative remdies.

### C. Alternatively, the claim against defendant Kondrla should be dismissed because it is not cognizable under *Bivens*.

Even if this Court were to excuse exhaustion of administrative remedies in this case, plaintiff's claim is not cognizable under **Bivens**. In **Bivens**, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents.

Magistrate Judge Aloi summarized the Supreme Court's jurisprudence around **Bivens**-type remedies following the 1971 decision:

> Over the next nine years, the Court allowed **Bivens**-type remedies twice more, in a Fifth Amendment gender discrimination case, **Davis v. Passerman**, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (an administrative assistant sued a Congressman for firing her because she was a woman), and in an Eighth Amendment cruel and unusual punishments clause case, **Carlson v. Green**,

8

446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma).

For nearly four decades, the Supreme Court has "consistently refused to extend Bivens to any new context or new category of defendants." ***Ziglar v. Abbasi***, [137] S.Ct. 1843, 1857 (2017). (citations omitted) (emphasis added). Moreover, in ***Abbasi***, the Supreme Court reiterated the significant limits to ***Bivens*** liability, cautioning courts to first consider whether to imply a remedy at all before reaching the merits of such claims. —— U.S. ——, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017). The court left no doubt that expanding the personal liability associated with ***Bivens*** is "a 'disfavored' judicial activity." *Id*. at 1857 (citations omitted). The Court specifically noted that "in light of the changes" to its "general approach" to "implied damages remedies," the analysis in ***Bivens***, ***Davis***, and ***Carlson*** might be "different if they were decided today." *Id*. at 1856. *See also* ***Corr. Servs. Corp. v. Malesko***, 534 U.S. 61, 67 & n.3, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (noting that ***Bivens*** relied "largely on earlier decisions implying private damages actions into federal statutes" from which the Supreme Court has since "retreated.").

As this Court recently noted, ***Abbasi*** "marked a substantial shift in how courts are to interpret allegedly unconstitutional acts by federal actors when there is no statute permitting a damages remedy." ***Holloway v. Coakley, et al.***, Case No. 2:17-CV-74, Order Dismissing Case, ECF No. 73 (N.D.W.Va. Apr. 8, 2019). Specifically, ***Abbasi*** "narrowed the circumstances in which a plaintiff may successfully state a claim under principles established in ***Bivens***." ***Atkinson v.***

9

*Holder*, No. 18-1677, 925 F.3d 606, 2019 WL 2147243, at *11 (4th Cir. Mar. 21, 2019) (citing *Abbasi*, 137 S.Ct. at 1857-58).

After *Abbasi*, there is now a two-step test when deciding whether a cognizable *Bivens* remedy exists for alleged official misconduct. First, a court must determine whether the claim presents a "new" *Bivens* context. Id. at 1859. If it does, the court must assess whether any "special factors counsel[ ] hesitation" in recognizing a new remedy "in the absence of affirmative action by Congress." *Id*. at 1857, 1859. Therefore, if the *Bivens* claim meaningfully differs from "a claim against an FBI agent for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; [or] a claim against prison officials for failure to treat an inmate's asthma," it is a new context. *Id*. at 1860.

In considering whether any special factors counsel hesitation in authorizing a damages remedy, this inquiry concentrates on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1858. When asserting an implied cause of action under the Constitution, such as a *Bivens*, a separation-of-powers analysis is central to the inquiry. See *id*. at 1857. The question becomes who should decide whether to provide a damages remedy—Congress or the Court. *Id*. "The answer most often will be Congress [*id*.]," because it "is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims." *Id*. at 1858. Moreover, the *Abbasi* decision instructs the lower

> courts that if claimants have alternative remedial structures, "that alone may limit the power of the Judiciary to infer a new *Bivens* 'cause of action.' In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] ... the courts must refrain from creating the remedy in order to respect the role of Congress." *Id*.

*Arrick v. Fed. Bureau of Prisons*, No. 1:17CV131, 2019 WL 8301052, at *12–13 (N.D.W. Va. Dec. 10, 2019) (Aloi, M.J.), *report and recommendation adopted*, No. 1:17-CV-131, 2020 WL 1472243 (N.D. W.Va. Mar. 26, 2020) (Kleeh, J.), *aff'd*, No. 21-6589, 2021 WL 4860337 (4th Cir. Oct. 19, 2021), and *aff'd*, No. 21-6589, 2021 WL 4860337 (4th Cir. Oct. 19, 2021).

Turning to the two-step test set forth in *Abbasi*, the undersigned finds that plaintiff's claim that the unsanitary conditions created by a broken toilet were ignored by defendant Kondrla would be a new context. "The Court has made clear that, for a case to be 'different in a meaningful way from [the three] previous Bivens cases,' a radical difference is not required." *Tun-Cos v. Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019) (citing *Abbasi*, 137 S.Ct. at 1859).

The finding of a new context requires the Court to assess whether any "special factors" counsel hesitation. The undersigned finds that alternative remedies are available to plaintiff, which strongly cautions against the expansion of *Bivens* into a new context. *Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action.").

Further, as defendants point out, another factor counseling hesitation in expanding *Bivens* is a separation-of-powers concern regarding Congress' involvement in prison litigation matters. As summarized by the Eastern District of North Carolina,

11

> as separation-of-powers concerns, "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform .... Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." ***Turner v. Safley***, 482 U.S. 78, 84-85 (1987). In the context of new constitutional claims filed by federal prisoners challenging prison policies, the Judiciary is ill suited, "absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." [***Abbasi***], 137 S. Ct. at 1857-58.

***Mays v. Smith***, No. 5:18-CT-3186-FL, 2020 WL 5821841, at *13 (E.D.N.C. Sept. 30, 2020). *See also* ***Schwarz v. Meinberg***, 761 F. App'x 732, 734 (9th Cir. 2019) ("the basis of Schwarz's claim—a nonfunctioning toilet—resembles the conditions of the confinement claim the Supreme Court rejected in ***Abbasi***."). "Following the guidance in [***Abbasi***], the undersigned finds Congress is better suited to determine whether to provide a damages remedy for Plaintiff's Eighth Amendment claim concerning conditions of confinement." ***Fuquea v. Mosley***, No. CV 1:19-1392-HMH-SVH, 2020 WL 3848150, at *7 (D.S.C. Mar. 6, 2020), *report and recommendation adopted*, No. CV11901392HMHSVH, 2020 WL 1899493 (D.S.C. Apr. 16, 2020).

Based on the foregoing, the undersigned finds that no ***Bivens*** remedy exists for plaintiff's claim that the unsanitary conditions created by a broken toilet were ignored by defendant Kondrla, and the Court should dismiss this claim.

## V. Recommendation

For the reasons set forth above, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [**Doc. 46**] should be **GRANTED** and this case should be **DISMISSED WITH PREJUDICE**.

The petitioner shall have **fourteen days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections,**

**identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**: November 17, 2022.

/s/ *James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE